IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ELIAS B. LANGHOLT and ANA-LILIA LANGHOLT, husband and wife, | No. 85223-0-I |
| Appellant, | DIVISION ONE |
| v. | UNPUBLISHED OPINION |
| KAISER FOUNDATION HEALTH PLAN OF WASHINGTON and JOHN DOES 1-10, | |
| Respondent. | |

SMITH, C.J. — In September 2022, Elias Langholt and Ana-Lilia Langholt (collectively referred to as Langholt) initiated a medical malpractice suit against Kaiser Foundation Health Plan of Washington after Elias[1] fell off a gurney while receiving treatment at Kaiser Urgent Care in Bellevue. Langholt alleged that Kaiser's negligence caused Elias to sustain injuries to his shoulder, hip and head. Elias passed away after filing the complaint, and in response to Kaiser's interrogatories, Ana-Lilia alleged that the head injury also resulted in his death. Kaiser moved for summary judgment, claiming that Langholt's medical expert was not sufficiently qualified to testify and that without a medical expert, Langholt could not prove the necessary elements of their medical negligence or informed consent claims. The trial court granted the motion for summary judgment and dismissed all of Langholt's claims with prejudice. On appeal, Langholt contends

---

[1] For clarity, we use the Langholt's first names where needed.

that the court erred in concluding that their expert was not qualified and therefore, erred in granting Kaiser's motion for summary judgment. We disagree in part and affirm the dismissal of both Langholt's negligence claims concerning the hip and head injuries, and the informed consent claim. But because Langholt's expert was qualified to testify about the shoulder injury, we reverse and remand to the trial court to address that claim on the merits.

FACTS

In August 2022, Elias Langholt was taken to Kaiser Urgent Care for fatigue and balance issues. Once there, Elias was placed on a gurney with siderails but the siderails were not raised. Elias had a difficult time fitting in the gurney and his family reported to nurses that he was slipping off. No one raised the siderails, despite the complaints. Eventually, Elias rolled out of the gurney, landing on his right side and hitting his head on the ground. He immediately complained of pain in his hip, shoulder and head. When his family called for help, four medical providers came in and lifted Elias back onto the gurney. He then received a CT[2] scan of his head and X-rays of his shoulder and hip. The shoulder X-ray displayed a displaced fracture of part of the shoulder blade. His medical records indicated that there were no injuries to his hip or head. The gurney siderails were raised after Elias's fall.

Langholt initiated a lawsuit against Kaiser, alleging medical malpractice. Langholt claimed that Kaiser committed unspecified acts or omissions that violated the standard of care and that the unspecified acts were made without

---

[2] Computerized tomography.

Langholt's informed consent. Langholt asserted three physical injuries (head, shoulder and hip) and any costs, expenses, and financial loss suffered as a result. Ana-Lilia later specified in answers to interrogatories that Elias suffered a "closed head injury" and added death to the alleged injuries. Langholt claimed that additional discovery was necessary to identify an employee or agent of Kaiser who failed to obtain Elias's informed consent but did not request any discovery related to this claim.

Kaiser denied all allegations and moved for summary judgment, arguing that without a medical expert, Langholt could not establish that Kaiser's actions fell below the appropriate standard of care. Kaiser also noted that Langholt's death certificate listed cause of death as "diffuse large B cell lymphoma" and "follicular lymphoma"—not Langholt's fall or subsequent head injury.

In response to Kaiser's motion, Langholt submitted a declaration from Linda Fordham, a registered nurse, and asserted that Fordham was qualified to testify as an expert. Fordham had served as the manager of Patient Care Services at Overlake Hospital. In her declaration, she opined that because Elias had been experiencing balance issues, the proper standard of care would have been to raise the gurney siderails to protect him. Fordham noted that Elias's shoulder, hip and head injuries would have likely been prevented if the guardrails were properly raised.

Kaiser objected to Fordham's interpretation of the medical records and noted several legal deficiencies in her declaration. Kaiser argued that Fordham did not provide sufficient description of her qualifications, that her statement

3

lacked required specificity to establish causation and that her statement did not address informed consent. Kaiser requested that the trial court strike or disregard Fordham's opinions. The following day, Fordham submitted a supplemental declaration, attaching her curriculum vitae (CV) to establish her competency as an expert.

The court granted Kaiser's motion for summary judgment on all issues and dismissed the case with prejudice. Langholt appeals.

ANALYSIS

Langholt asserts that the court erred in entering a summary judgment order dismissing all of their claims against Kaiser. They argue that competent expert testimony established both the required standard of care and causation. But Langholt failed to provide a competent expert witness in support of their claims for damages related to Elias's hip injury, head injury and his resulting death, as well as the lack of informed consent. As to Elias's shoulder injury claim, however, we agree that a genuine issue of material fact exists sufficient to survive summary judgment.

Summary Judgment

We review an order granting summary judgment de novo, performing the same inquiry as the trial court. Nichols v. Peterson NW, Inc., 197 Wn. App. 491, 498, 389 P.3d 617 (2016). In doing so, we consider the evidence and all reasonable inferences in the light most favorable to the non-moving party. Keck v. Collins, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). "Summary judgment is appropriate only if there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law." Rublee v. Carrier Corp., 192 Wn.2d 190, 198, 428 P.3d 1207 (2018). "A genuine issue of material fact exists when reasonable minds could differ on the facts controlling the outcome of the litigation." Dowler v. Clover Park Sch. Dist. No. 400, 172 Wn.2d 471, 484, 258 P.3d 676 (2011). And the burden of showing that no genuine issue of material fact exists lies with the moving party. Nichols, 197 Wn. App. at 498.

1. Expert Competency

Kaiser first moved for summary judgment based on Langholt's failure to establish Fordham's competency as an expert witness. We conclude that Langholt did establish Fordham's competency for the standard of care as it relates to nursing. But she is not a competent expert beyond that scope. Without a competent expert to provide the standard of care and prove causation for each alleged injury, not all of Langholt's claims survive summary judgment.

"Although appellate courts generally review a decision to exclude expert witness testimony at trial under an abuse of discretion standard, the de novo standard of review applies when reviewing trial court evidentiary rulings made in conjunction with a summary judgment motion." Watness v. City of Seattle, 16 Wn. App. 2d 297, 305, 481 P.3d 570 (2021) (internal citation omitted).

In a medical negligence case, expert testimony is generally required to establish standard of care and to prove causation. Behr v. Anderson, 18 Wn. App. 2d 341, 363, 491 P.3d 189 (2021). If a defendant proves a lack of competent expert testimony, " 'the burden then shifts to the plaintiff to produce an affidavit from a qualified expert witness that alleges specific facts establishing a

5

cause of action.' " <u>Behr</u>, 18 Wn. App. 2d at 363 (quoting <u>Guile v. Ballard Cmty. Hosp.</u>, 70 Wn. App. 18, 25, 851 P.2d 689 (1993)).

To qualify as an expert, a witness must have " 'sufficient expertise in the relevant specialty' such that the expert is familiar with the procedure or medical problem at issue." <u>Frausto v. Yakima HMA, LLC</u>, 188 Wn.2d 227, 232, 393 P.3d 776 (2017) (quoting <u>Young v. Key Pharm., Inc.</u>, 112 Wn.2d 216, 229, 770 P.2d 182 (1989)).  Accordingly, nurses are competent to testify with respect to the standard of care as it relates to nursing.  <u>Frausto</u>, 188 Wn.2d at 239.  Only physicians may testify as to another physician's standard of care.  <u>Young</u>, 112 Wn.2d at 228.[3]

Both of Fordham's declarations demonstrate her competency and experience as a nurse.  Her CV lists her registered nurse (RN) degree, a certification in emergency medicine and the wide array of positions she has held in her 45-year career.  Her vast experience with nursing establishes her competency to testify as to the standard of care in nursing.  Because raising siderails is within the scope of her expertise as a nurse, Fordham is qualified to testify about whether the siderails should have been raised and whether Elias would have fallen if the rails were raised.  And because the shoulder fracture was documented and previously diagnosed, Fordham could have testified about both the fracture and the causation.  Therefore, the court erred in concluding that Fordham was not qualified to testify about the shoulder injury.

---

[3]    Although <u>Frausto</u> was decided after <u>Young</u>, the court specifically chose not to reconsider <u>Young</u>'s holding.  <u>Frausto</u>, 188 Wn.2d at 229 n.1.

But without further credentials, Fordham could not testify as to undocumented or undiagnosed injuries. Nothing indicates that Fordham has the qualifications to identify and diagnose undocumented injuries. Because Elias's hip and head injury were not diagnosed or documented, Fordham cannot offer an opinion about them. And because Langholt did not provide an affidavit from an expert witness qualified to testify as to the hip and head injury, the claims cannot survive summary judgment.

2. Medical Negligence

Because Fordham is a competent witness for Elias's alleged shoulder injury, the next question is whether Kaiser establishes that no genuine issue of material fact exists. Kaiser fails to do so.

To prove a medical negligence claim based on a breach of the standard of care, a plaintiff must demonstrate that (1) "[t]he health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he or she belongs, in the state of Washington, acting in the same or similar circumstances," and (2) that "such failure was a proximate cause of the injury complained of." RCW 7.70.040. A medical negligence claim requires proof of a violation of the standard of care and proximate cause. RCW 7.70.040. A plaintiff must establish actual injury. RCW 7.70.040.

Fordham's declaration establishes a violation of the standard of care. As a competent expert witness, Fordham detailed that "given the triage note describing poor balance and the testimony that Mr. Langholt was having difficulty

fitting on the gurney and was slipping off it, [the standard of care] required that the gurney siderails be raised to protect Mr. Langholt from falling." It is undisputed that the siderails were not raised and that Elias fell. The fact at issue here is whether the fall proximately caused Elias's injuries.

Langholt asserts that Elias's fall resulted in a shoulder fracture. The shoulder X-ray did display "a slightly displaced fracture of the acromion at its attachment to the scapula." And the care note following the X-ray attributes the injury to the fall, stating "this [fracture] occurred in a fall here." In contrast, Kaiser cites to the "bone aches" that Elias described on admission to the hospital, arguing that nothing indicates this fall caused the fracture and his shoulder could have been broken when he arrived.

This question of causation is a factual one, which controls the outcome of the litigation, and on which reasonable minds could differ. Without more information, reasonable minds could disagree on whether the fall caused the break or Elias's earlier pain evidenced a previous fracture. A factual finding that Elias's "bone aches" were the result of a previous fracture might suggest that his fall did no damage at all. And to the contrary, a finding that no evidence of a fracture existing before the fall would establish proximate causation. Therefore, this is a genuine issue of material fact. Because Kaiser fails to show a lack thereof, Langholt's claim as to Elias's injured shoulder, and any damages that follow, including costs, expenses, and financial loss, survive summary judgment.

### 3. Informed Consent

Langholt lastly asserts that the acts or omissions that violated the required standard of care were made without Elias's informed consent. As Langholt provides no further information on this claim, we conclude that it does not survive summary judgment.

To prove an informed consent claim, a plaintiff must establish "(a) [t]hat the health care provider failed to inform the patient of material fact or facts relating to the treatment; (b) [t]hat the patient consented to the treatment without being aware of or fully informed of such material fact or facts; (c) [t]hat a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts; [and] (d) [t]hat the treatment in question proximately caused injury to the patient." RCW 7.70.050(1).

Langholt does not address any of these factors. Rather, Langholt's complaint alleges that "[Kaiser] committed negligent acts and omissions . . . [that] were made without informed consent," but does not elaborate on the claim. In answering interrogatories, Langholt did not identify an employee or agent who failed to obtain informed consent or state the information they failed to give. They did acknowledge a need for additional discovery but did not request a continuance to conduct it. And Fordham does not address the informed consent claim at all. Without expert testimony on the issue, or truly any facts, Kaiser easily establishes a lack of genuine issue of material fact. Langholt's informed consent claim cannot survive summary judgment.

We affirm the dismissal of the case regarding Elias's hip injury, head injury and death, as well as the informed consent claim, but reverse and remand Langholt's claim regarding the shoulder injury to proceed on the merits.

WE CONCUR:

Smith, C.J.

Brumm, J

Hazel, ACJ